## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**HAYWOOD BABINEAUX III ET AL**          **CASE NO.  2:21-CV-00410**

**VERSUS**                                         **JUDGE JAMES D. CAIN, JR.**

**HUDSON INSURANCE CO ET AL**            **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 28) filed by Plaintiffs, Haywood Babineaux, III, Lawanna Holmes, and Sharese Carter, through counsel wherein Plaintiffs move for partial summary judgment in their favor.  Plaintiffs maintain that there is no genuine issue of material facts as to Defendant, TransMaquila, Inc.'s vicarious liability for the negligence of Defendant, David Roque Elizalde.

## FACTUAL STATEMENT

On March 8, 2020, Haywood Babineaux, III and Sharese Carter were guest passengers in a vehicle driven by Lawanna Holmes.[1]  Defendant David Azael Roque Elizalde, was driving a 2019 Freightliner tractor-trailer eastbound on Interstates 10.[2] The Freightliner crashed into the vehicle occupied by Plaintiffs when Mr. Elizalde attempted to make a lane change.

---

[1] Plaintiffs' exhibit 1.
[2] *Id.* p. 30:12-16.

TransMaquila, Inc. owned the Freightliner and gave Mr. Elizalde permission to operate it. TransMaquila, Inc. is located in Brownsville, Texas. At the time of the crash, Mr. Elizalde was hauling a load for TransMaquila, Inc.[3]

Mr. Elizade is an employee of TransMaquila, S.A.[4] TransMaquila, S.A. is a separate Mexican company located in Matamoras, Mexico.[5]

At the time of the crash, Mr. Elizalde did not have any type of health benefits, dental benefits, 401(k) benefits, or retention bonuses through TransMaquila, Inc.[6] TransMaquila, S.A. referred Mr. Elizalde to TransMaquila, Inc.[7] TransMaquila, S.A. obtained background information and employment history on Mr. Elizalde.[8]  TransMaquila, Inc. hired Mr. Elizalde, prior to the subject crash as a B1 driver on January 15, 2020.[9]

Mr. Elizalde completed a TransMaquila, Inc. "Application of Employment" when he was hired for employment on January 15, 2020.[10]  TransMaquila S.A. also used the same form.[11] TransMaquila trained Mr. Elizalde after he was hired on January 15, 2020.[12] TransMaquila, Inc. verifies a driver's qualifications, background information, and employment history with TransMaquila S.A. before a driver is qualified to drive one of

---

[3] Plaintiffs' exhibit 3, TransMaquila, Inc. (Gonzales) deposition, pp. 86-87, 76, 77; Plaintiffs' exhibit 4, p. 37:7-9.
[4] Defendant's exhibit A, Gonzales deposition, pp. 73:24-74:2, 9-17; 105:11-14.
[5] *Id.* p. 22:8-12.
[6] *Id.* p. 107:8-17.
[7] *Id.* p. 28:23-29:2.
[8] *Id.* p. 30:12-16.
[9] Plaintiffs' exhibit 3, Gonzales deposition, pp. 47:8-24, 70:22-25; 71-72, 73:1-23; Plaintiffs exhibit 5, p. 9.
[10] *Id.* p. 131:5-19.
[11] Defendant's exhibit A, p. 146:7-21.
[12] Plaintiffs' exhibit 3, Gonzales deposition, p. 27:6-16, 69:17-25; 70:1-18; 87:8-12.

TransMaquila, Inc.'s trucks.[13] TransMaquila, Inc. ensures that TransMaquila, S.A. drivers adhere to all DOT regulations and standards and are qualified.[14]

TransMaquila, Inc. has a contract with TransMaquila, S.A. to use drivers hired by TransMaquila, S.A.[15] On the date of the crash, TransMaquila, Inc. received payment for the load being hauled by Mr. Elizalde; TransMaquila, S.A. did not have any interest in the profits or money received from the load recipient.[16]

TransMaquila, Inc. pays TransMaquila, S.A. and TransMaquila, S.A. pays its drivers.[17] Mr. Elizalde's supervisors and dispatchers work for TransMaquila, S.A.[18] TransMaquila, S.A. supervisors and dispatchers assigned Mr. Elizalde to the truck and load he was driving when the accident occurred.[19] TransMaquila, Inc. does not choose the drivers to haul its loads,[20] nor does it hire drivers to perform load hauls for itself.[21] Drivers are processed by TransMaquila S.A., and then qualified by TransMaquila, Inc.  After qualification, "the drivers belong to TransMaquila, Inc, and they're the only ones that operate TransMaquila, Inc. vehicles".[22]

TransMaquila, S.A. instructed Mr. Elizalde on where to pick up and deliver the load he was hauling when the accident occurred.[23] TransMaquila, Inc. supervises TransMaquila,

---

[13] Defendants' exhibit A, Gonzales deposition, pp. 31:8-16; 99:24-100:12; 105:410; 144:15-20.
[14] *Id.* p. 145:2-4.
[15] *Id.* p. 76:5-17.
[16] Plaintiffs' exhibit 3, Gonzales deposition, pp. 85:18-25; 86:1, 123:23-25; 126:1-4; 124:2-4.
[17] Defendants' exhibit A, Gonzales deposition, p. 74:21-22.
[18] *Id.* p. 83:24-84:4..
[19] *Id.* p. 83:16-19.
[20] *Id.* p. 84:14-16.
[21] Plaintiffs' exhibit 3, Gonzales deposition, p. 124-127.
[22] *Id.*
[23] *Id.* p. 85:9-17.

S.A.'s employees to make sure they follow all DOT regulations,[24] and could terminate permission for Mr. Elizalde to drive its trucks.[25]

At the time of the crash, Mr. Elizalde was required to follow TransMaquila, Inc.'s rules, policies and procedures,[26] and attend its annual safety meetings conducted by TransMaquila, Inc.[27]  TransMaquila, Inc. could terminate a drivers' right to drive its trucks if he did not follow its policies and procedures.[28] Following the crash, TransMaquila, Inc. required Mr. Elizalde to complete a drug test; TransMaquila, Inc. could have terminated Mr. Elizalde, had he failed the test due to a violation of TransMaquila, Inc's alcohol and drug policy.[29]

The system detailed above allows TransMaquila, Inc. to employ Mexican citizens to drive their trucks, through TransMaquila, S.A.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

---

[24] *Id.* pp.86:22,87:2, 145:2-4.
[25] *Id.* p. 88:18-24.
[26] Plaintiffs' exhibit 3, Gonzales deposition, pp. 87-88.
[27] *Id.* p. 108:5-21.
[28] *Id.* p. 88:20-24.
[29] *Id.* p. 124-127

The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

TransMaquila, Inc. maintains that Mr. Elizalde is not its employee, and thus, it cannot be held liable vicariously liable to Plaintiffs for any negligent conduct by Mr.

Elizalde. Plaintiffs argue that there is essentially no line of separation between TransMaquila, Inc. and TransMaquila, S.A.

Plaintiffs rely on the following facts concerning Mr. Elizalde on the date of the crash:

- When TransMaquila, Inc. obtains drivers from Mexico, they are trained by TransMaquila, Inc. and are subject to termination if they do not follow TransMaquila, Inc.'s rules when making deliveries for TransMaquila, Inc.

- Mr. Elizalde was hired by TransMaquila, Inc. and drove exclusively for TransMaquila, Inc. This fact is disputed by TransMaquila, S.A. below.

- TransMaquila, Inc. is responsible for training, educating, supervising, and controlling the behavior of Mr. Elizalde when he is driving TransMaquila, Inc.'s tractors and making deliveries for the sole benefit of TransMaquila, Inc.

- TransMaquila, S.A. would provide the names of prospective Mexican drivers to TransMaquila, Inc., but TransMaquila, Inc. solely decided which individuals would haul loads for TransMaquila, Inc. This fact is disputed by TransMaquila, S.A. below.

- Mr. Elizalde was required to be qualified by TransMaquila, Inc. before he was allowed to drive TransMaquila, Inc. trucks. If Mr. Elizalde did not meet TransMaquila, Inc.'s qualifications, TransMaquila, Inc. would have rejected him as driver for TransMaquila, Inc.

- Prior to this crash, Mr. Elizalde completed a TransMaquila, Inc. application packet for employment. In this packet, Mr. Elizalde was repeatedly referred to as an "employee."

- TransMaquila, Inc. required Mr. Elizalde to sign a TransMaquila, Inc. Statement of Safety Policies, wherein he agreed to abide by TransMaquila, Inc. 's policies and procedures when driving for TransMaquila, Inc.

- The aforementioned policy states the following:

    It is the policy of TransMaquila, Inc.'s employees that all safety rules within our Safety Program will be strictly enforced at all

times. TransMaquila, Inc. has a zero tolerance for any infraction of our safety policies and procedures.[30]

- TransMaquila, Inc. was responsible for the supervision of Mr. Elizalde. This fact is disputed by TransMaquila, S.A. below.

- TransMaquila, Inc. could terminate Mr. Elizalde for violating the policies and procedures, including the alcohol and drug policy.[31]

Conversely, TransMaquila, Inc. maintains that it was not Mr. Elizalde's employer, nor could it be deemed to be Mr. Elizalde's employer because it did not exercise sufficient control over Mr. Elizalde. TransMaquila, Inc. relies on the following facts:

- TransMaquila, Inc. is a company located in Brownsville, Texas; TransMaquila, S.A. is a separate Mexican company located in Matamoras, Mexico.

- Mr. Elizalde is an employee of TransMaquila, S.A.

- Mr. Elizalde has never had an employment contract with TransMaquila, Inc.

- TransMaquila, Inc. has a contract with TransMaquila, S.A. for TransMaquila, S.A. to provide drivers for TransMaquila, Inc.

- TransMaquila, S.A. obtains background information and employment history on its drivers, including Mr. Elizalde.

- TransMaquila, Inc. does not maintain information regarding Mr. Elizalde's driving experience or prior employers; that information is maintained by TransMaquila, S.A. This fact is disputed.

- TransMaquila, Inc. verifies a driver's qualifications, background information, and employment history with TransMaquila, S.A. before a driver is qualified to drive one of TransMaquila, Inc.'s units.

- TransMaquila, S.A. was responsible for the selection and engagement of Mr. Elizalde.

---

[30] Plaintiffs' exhibit 5, p. 32.
[31] However, TransMaquila's power to terminate a driver, including Mr. Elizalde, was directly related to the driver's requirement that he adhere to all DOT regulations, including drug screenings.

- TransMaquila, Inc. pays TransMaquila, S.A. for its drivers, and TransMaquila, S.A. pays its drivers' wages.

- Mr. Elizalde does not have any type of health benefits, dental benefits, 401(k) benefits, or retention bonuses through TransMaquila, Inc.

- TransMaquila, S.A. pays any bonus to which its drivers, including David Elizalde, are entitled.

- TransMaquila, S.A. assign the loads to the drivers, including Mr. Elizalde, of TransMaquila, Inc.

- TransMaquila, S.A. also gave Mr. Elizalde instructions on where to pick up and deliver the load he was hauling when the accident happened.

Louisiana black letter law provides that employers are responsible for the damages caused by their employee's negligence when the employee was acting in the course and scope of their employment. Louisiana Civil Code Art. 2320. An employer-employee relationship between the parties is necessary for an employer to be vicariously liable for the acts of another. The most important factor to consider in determining whether an employer-employee relationship exists is the right of the employer to control the work of the employee. *Roberts v. State, Through Health and Human Resources Administration*, 404 So.2d 1221 (La. 9/28/81); *Robichaux v. Randolf*, 555 So.2d 581, 584 (La.App. 1st Cir. 1989).

The primary factors evidencing the right to control are: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. *Hillman v. Comm-Care, Inc.*, 01-1140 (La. 1/15/02) 805 So.2d 1157, 1162. Louisiana courts have determined that none of the individual factors are controlling, and the totality of the circumstances must be considered when determining whether an employer-employee

relationship exists in each case. *Id.* at 1163. Moreover, courts analyze the following factors when determining if an individual is a "borrowed employee" such that a business will be liable for that individual's acts: (1) right of control, (2) selection of employees, (3) payment of wages, (4) power of dismissal, (5) relinquishment of control by the general employer, (6) which employer's work was being performed at the time in question, (7) agreement, either implicit or explicit between the borrowing and lending employer, (8) furnishing of necessary instruments and the place for performance of the work in question, (9) length of time in employment, (10) acquiescence by the employee in the new work situation. *Walters v. Metropolitan Erection Co.*, 94-0162 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, 1146.

Here, the facts suggest that Mr. Elizalde is a "borrowed employee." In its corporate deposition, Transmaquila, Inc. testified that drivers referred by TransMaquila S.A. "…belong to TransMaquila, Inc…they are supervised by us…. and they follow our rules."[32] TransMaquila, Inc. required that Mr. Elizalde sign TransMaquila, Inc.'s Driver Qualification File List (which identified him as an "employee"), TransMaquila, Inc.'s Application for Employment, TransMaquila, Inc.'s Employee Agreement and Consent to Drug and/or Alcohol Testing, TransMaquila, Inc.'s Statement of Safety Policies, TransMaquila, Inc.'s Drug and Alcohol Free Workplace Policy, and TransMaquila, Inc.'s Truck Cleanliness Notice.[33]

TransMaquila, Inc. was required to produce Mr. Elizalde's personnel file, which it did. The file contained Mr. Elizalde's Driver Qualification File List, driving experience,

---

[32] Plaintiffs' exhibit 3, Gonzales deposition, p. 24:5-10, 88:7-13.
[33] Plaintiffs' exhibit 5, p. 8, 13, 16, 32-41, 43-45, 46.

and prior employers. TransMaquila, Inc. testified that some drivers are proposed by TransMaquila, S.A. to drive TransMaquila, Inc. trucks. However, TransMaquila, Inc. also testified that it could reject drivers if they are not qualified or reject drivers if they are not good enough to drive TransMaquila, Inc. trucks.[34]

Prior to being hired, Mr. Elizalde had to complete a TransMaquila, Inc. road test and participate in a TransMaquila, Inc. safety orientation, dispatch orientation, and a welcome orientation.[35] Mr.Elizalde was also required to take a TransMaquila, Inc. written exam.[36]

TransMaquila, Inc. approved Mr. Elizalde, trained him, and exercised control over him after he was approved as a driver for TransMaquila, Inc trucks. Also, the evidence shows that while TransMaquila, S.A. paid Mr. Elizalde's wages, it received no interest or profits in the loads hauled by TransMaquila, Inc.[37]

The Court finds that TransMaquila, Inc. exercised sufficient control over Mr. Elizalde for him to be deemed a borrowed employee.

## <u>CONCLUSION</u>

For the reasons set forth herein the Motion for Summary Judgment" (Doc. 28) filed by Plaintiffs, Haywood Babineaux, III, Lawanna Holmes, and Sharese Carter, will be granted, as the Court finds that Mr. Elizalde is a borrowed employee, and thus

---

[34] Defendant's exhibit A, Gonzales deposition, pp. 84-85.
[35] Plaintiffs' exhibit 5, p. 18, 23.
[36] *Id.* pp. 24-31.
[37] Plaintiffs' exhibit 3, p. 123-124.

TransMaquila, Inc. is vicariously liable for any of Mr. Elizalde's negligent conduct concerning the subject accident.

**THUS DONE AND SIGNED** in Chambers on this 30th day of March, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**